# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

TONYA KING,

      Plaintiff,                      Case No.:

v.                                               Hon.

MEIJER, INC. and AUSTIN MATHIS,

      Defendants.

---

David A. Nacht (P47034)
Fabiola A. Galguera (P84212)
NACHTLAW, P.C.
Attorneys for Plaintiff
101 N. Main St., Suite 555
Ann Arbor, Michigan 48104
(734) 663-7550
dnacht@nachtlaw.com
fgalguera@nachtlaw.com

---

## COMPLAINT AND JURY DEMAND

      Plaintiff, Tonya King, by and through her attorneys, NACHTLAW, P.C., hereby alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

      1.     This is an action for sex discrimination, retaliation, and hostile work environment in violation of Title VII, 42 U.S.C. § 2000e and sex discrimination, retaliation, and hostile work environment in violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA").

      2.     Plaintiff, Tonya King is female.

      3.     Plaintiff is an individual residing in Norwich Township, Newaygo County, Michigan.

1

4. Defendant Meijer, Inc. ("Meijer") is a private corporation headquartered and incorporated under the constitution and laws of the State of Michigan with a supermarket location in Big Rapids, Michigan.

5. Defendant Austin Mathis was an employee of Defendant Meijer.

6. This Court has jurisdiction pursuant to 42 U.S.C. § 2000e (discrimination, retaliation, and hostile work environment); 28 U.S.C. § 1331 (federal question jurisdiction); and 28 U.S.C. § 1343(a)(4) (jurisdiction over civil rights claims). This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims of sex discrimination, retaliation, and hostile work environment in violation of the Elliott-Larsen Civil Rights Act, MCLA 37.2101, et seq. (ELCRA).

7. Venue is proper in this Court under 28 U.S.C. § 1391 and 29 U.S.C. § 621 et seq. as this is the judicial district in which the unlawful employment practices occurred, the relevant employment records are kept, and Defendant Meijer's principal place of business is located.

8. Defendant Meijer is an employer and Plaintiff is an employee within the meaning of Title VII and the ELCRA.

9. Plaintiff filed a timely charge of discrimination concurrently with the Equal Employment Opportunity Commission ("EEOC") and the Michigan Department of Civil Rights ("MDCR") alleging retaliation and discrimination on the basis of her sex (female).

10. Plaintiff's charge was filed within 300 days of the commission of the unlawful employment practices alleged in this claim.

11. The EEOC sent Plaintiff her notice of right to sue on or about August 7, 2020, and Plaintiff has filed this complaint within 90 days of receiving her notice of rights.

## STATEMENT OF FACTS
### Plaintiff Experiences Sexual Harassment at Meijer

12. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

13. Plaintiff, a woman, began working at Defendant Meijer's Big Rapids location on July 17, 2018.

14. Plaintiff was trained to work in the bakery, the deli, and the produce department.

15. Plaintiff had a co-worker, Defendant Austin Mathis, who consistently made comments of a sexual nature towards her.

16. Defendant Mathis would make these comments in front of members of management such as produce team leader Amanda Haendiges.

17. Plaintiff recalls overhearing a conversation between Defendant Mathis and Ms. Haendiges where Defendant Mathis was asking why he couldn't keep a girlfriend and Ms. Haendiges responded it was probably "because of the sex."

18. Such conversations of a sexual nature between management and Defendant Mathis demonstrate that Defendant Mathis's behavior was viewed as acceptable by management.

19. On August 19, 2019, Defendant Mathis asked Plaintiff to look at his hand and told her his "fingers were sore from banging [his] girlfriend."

20. On September 2, 2019, Defendant Mathis was talking about his girlfriend and told Plaintiff his girlfriend liked having sex with him because of how much "she liked his penis."

21. On September 9, 2019, Defendant Mathis showed Plaintiff an unsolicited naked picture of himself and asked her "how do you like these muscles?"

22. On September 27, 2019, when Plaintiff asked Defendant Mathis how he was doing that day, he responded by telling her his "nine-inch penis is doing real good" but he wasn't.

23. Plaintiff told Defendant Mathis his comment was inappropriate and unacceptable.

24. On October 18, 2019, Defendant Mathis once again described to Plaintiff in detail his sexual relationship with his girlfriend while they were working.

25. Plaintiff firmly told him to stop, but Defendant Mathis yelled at her, saying he could do whatever he wanted.

26. He did not do his work in the produce department for the rest of the shift.

27. Ms. Haendiges was present for some of the instances described above.

28. On more than one occasion, Plaintiff became visibly upset, and asked Ms. Haendiges and other employees in the vicinity to help, stating "you need to do something."

29. Ms. Haendiges would often laugh and ignore Plaintiff's requests that she intervene to prevent Defendant Mathis's continued sexual harassment.

### **Defendant Mathis Retaliates Against and Sexually Assaults Plaintiff**

30. In retaliation for reporting his conduct to Meijer management, Defendant Mathis tormented Plaintiff while she was at work.

31. On one occasion, he dropped raspberries on the ground and smashed them so Plaintiff would have to clean it up.

32. Defendant Mathis would also throw fruit at Plaintiff, including a watermelon that could have seriously injured her.

33. As a result of Meijer management's failure to intervene, Defendant Mathis's harassment of Plaintiff continued.

34. On November 9, 2019, while Plaintiff was trying to put a hairnet on, Defendant Mathis brushed a feather duster against Plaintiff's breasts and made his way down to her waist. Plaintiff tried to push the feather duster away, causing Defendant Mathis to move behind her, an

opportunity he took to make a crude gesture with the duster. He then asked her how she thought the duster would feel "inside her."

35. This sexual assault caused Plaintiff to feel extreme distress.

36. That same day, a coworker texted Plaintiff expressing unhappiness with Defendant Mathis and said, "yea I don't know what to do because Amanda [Haendiges] and [fresh line leader] Ryan [Gerding] favor him."

37. On November 17, 2020, Plaintiff again reached out to Ms. Haendiges, intending to talk about the problems Defendant Mathis caused within the produce department, and his inappropriate sexual conduct towards Plaintiff.

38. When Plaintiff told Ms. Haendiges, she wanted to talk about Defendant Mathis, she noticed a pronounced change in Ms. Haendiges's demeanor.

39. Plaintiff was forced to follow Ms. Haendiges through the store as she began to walk away, following her all the way to the exit.

40. Plaintiff only had an opportunity to raise problems with Defendant Mathis's job performance before Ms. Haendiges ended the conversation.

41. Shortly after, Plaintiff received a text message from Ms. Haendiges saying she would talk to Defendant Mathis and "make sure he got his work done," which utterly failed to address his ongoing sexual harassment.

42. On November 22, 2019, Defendant Mathis told Plaintiff she smelled nice and made a comment about what her genitals would smell like. When Plaintiff said he needed to stop making sexual comments, Defendant Mathis answered that he could do whatever he wanted without repercussion.

43. Plaintiff next approached Mr. Gerding about Defendant Mathis's ongoing sexual harassment, but Mr. Gerding cut her off and emphasized how good of a worker Defendant Mathis was.

44. On November 25, 2019, while in the cooler, Defendant Mathis pointed the feather duster at Plaintiff. She became upset and told him to leave her alone.

45. After 1.5 hours of neglecting his work during his shift, Defendant Mathis found Plaintiff and told her Mr. Gerding was saying she had done a "shitty job" that day. When Plaintiff spoke to Mr. Gerding, he told her he had not said that.

46. Plaintiff then confided in a co-worker, who urged her to speak to additional Meijer's management.

47. On November 26, 2019, Plaintiff spoke to customer service line leader Jerry Pulcifer about the feather duster incident.

48. Pulcifer informed store director Brian Allison, Mr. Gerding, and Ms. Haendiges of her allegations.

49. Defendant Meijer eventually terminated Defendant Mathis on December 20, 2019, but that did not stop him from continuing to harass Plaintiff.

50. Defendant Mathis continued to go to the Big Rapids Meijer location and bother Plaintiff by making sexual gestures while she worked.

51. When Plaintiff alerted members of management, including Mr. Allison and Mr. Gerding, that Defendant Mathis was still harassing her, they told her there was nothing Meijer could do.

52. On multiple occasions, Plaintiff alerted members of management that Defendant Mathis was in the store and she was told to hide or "stay in the back" until he left.

## **Meijer's Management Retaliates against Plaintiff for Filing a Charge of Discrimination with the EEOC**

53. On December 11, 2019, Plaintiff filed a charge of discrimination as to sex and retaliation with the MDCR.

54. Big Rapids Meijer's managers Ms. Haendiges and Mr. Gerding retaliated against Plaintiff.

55. Management began to assign her to jobs she wasn't trained for, setting her up to perform poorly.

56. Plaintiff abruptly went from receiving generally positive feedback on her performance to universally negative feedback.

57. On multiple occasions, Meijer management changed her schedule the very day she was scheduled to work, causing her to appear to be late.

58. Then, in September 2020, Plaintiff was told to work exclusively in the produce coolers.

59. This assignment was intended to be punitive.

60. On multiple occasions, management denied her legally mandated breaks.

61. Defendants' willful and malicious disregard for Plaintiff's well-being led her to experience physical and emotional harm.

62. Plaintiff's health declined, and she developed kidney stones and stomach issues due to the stress.

63. Plaintiff also experienced physical fatigue from the constant anxiety caused by Meijer's retaliatory conduct and Defendant Mathis's frequent visits to the store.

64. Plaintiff was forced to seek psychiatric treatment because the emotional harm caused by Defendants conduct was disrupting her life.

65. On October 15, 2020, Plaintiff was constructively discharged due to Defendants' discriminatory and retaliatory actions including, but not limited to: reducing her job responsibilities, placing her in positions she was not trained for, forcing her to spend hours in the cooler, denying her legally-mandated breaks, frequently changing her schedule, and allowing her Defendant Mathis to come into the store and continue to harass her.

66. Defendants intentionally created working conditions so intolerable that Plaintiff had no choice but to resign.

67. Defendants did so because of Plaintiff's gender, and in retaliation for Plaintiff's opposition to Defendants' discriminatory actions.

68. Any reasonable person would have resigned in Plaintiff's position based on Defendants' conduct.

69. On November 3, 2020, Plaintiff filed an additional charge alleging constructive discharge with the MDCR.

## COUNT I

### SEX DISCRIMINATION IN VIOLATION OF
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C § 2000e

70. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

71. At all relevant times, Defendant Meijer was an employer with greater than 15 employees and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b).

72. Plaintiff is a member of a protected class as a female.

73. Defendant Meijer's actions were motivated by unlawful discrimination against Plaintiff because of her sex.

8

74. Defendant Meijer subjected Plaintiff to adverse employment actions, including but not limited to constructive discharge and moving her to a less desirable position, because of her sex.

75. As a direct and proximate result of Defendant Meijer's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of career opportunities; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; and loss of professional reputation.

76. Defendant Meijer's conduct was done with malice and reckless indifference to Plaintiff's federally protected civil rights, entitling her to punitive damages.

## COUNT II

### RETALIATION IN VIOLATION OF
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C § 2000e

77. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

78. At all relevant times, Defendant Meijer was an employer with greater than 15 employees and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b).

79. Plaintiff engaged in conduct protected by Title VII's unlawful employment practices provision including opposing discrimination perpetuated by Defendant Mathis and filing a complaint with the Michigan Department of Civil Rights alleging discrimination and harassment based on her sex.

80. But for Plaintiff's complaint of gender discrimination against Defendant Meijer to the MDCR, she would not have been forced to resign from Defendant Meijer.

81. Defendant Meijer's actions constitute unlawful retaliation against Plaintiff because she engaged in a protected activity and was subjected to adverse employment actions, including but not limited to constructive discharge.

82. As a direct and proximate result of Defendant Meijer's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of career opportunities; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; and loss of professional reputation.

83. Defendant Meijer's conduct was done with malice and reckless indifference to Plaintiff's federally protected civil rights, entitling her to punitive damages.

## COUNT III

### HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C § 2000e

84. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

85. At all relevant times, Defendant Meijer was an employer with greater than 15 employees and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b).

86. Plaintiff is a member of a protected class as a female.

87. During Plaintiff's employment, Defendant Meijer's employees and Defendant Mathis subjected Plaintiff to severe and pervasive unwelcome sexual conduct and communication that was intended to and did substantially interfere with Plaintiff's employment.

88. This unwelcome conduct created a hostile work environment based on Plaintiff's sex.

89. This conduct was objectively and subjectively such that a reasonable person would find it hostile or abusive.

90. Plaintiff found this conduct both objectively and subjectively offensive.

91. Defendant Meijer had both actual and constructive notice that its employees and Defendant Mathis had created a sexually and/or sex-based hostile and offensive work environment for Plaintiff.

92. Plaintiff opposed and appropriately reported the unwelcome and offensive conduct to Defendant Meijer.

93. Defendant Meijer failed to take effective remedial action to stop the harassment.

94. Defendant Meijer's actions were taken with reckless disregard for Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

95. As a direct and proximate result of Defendant Meijer's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; and loss of professional reputation.

## COUNT IV

### SEX DISCRIMINATION IN VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2201 et seq.

96. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

97. At all relevant times, Defendant Meijer was an employer and Plaintiff was an employee within the meaning of the Elliott-Larsen Civil Rights Act, MCL § 37.2101.

98. Plaintiff is a member of a protected class because of her sex: female.

99. Defendant Meijer's actions were motivated by unlawful discrimination against Plaintiff because of her sex, including but not limited to her constructive discharge.

100. If not for Plaintiff's sex, she would not have been constructively discharged by Defendant Meijer.

101. Defendant Meijer's actions constitute unlawful discrimination against Plaintiff because of her sex in violation of MCL § 37.2202.

102. As a direct and proximate result of Defendant Meijer's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; and loss of professional reputation.

## COUNT V

### RETALIATION IN VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2701 et seq.

103. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

104. At all relevant times, Defendant Meijer was an employer and Plaintiff was an employee and person, covered by and within the meaning of the Elliott-Larsen Civil Rights Act, MCL § 37.2101.

105. Plaintiff engaged in conduct protected by ELCRA's anti-retaliation provision including filing a complaint with the Michigan Department of Civil Rights against Defendant Meijer alleging discrimination and harassment based on her sex.

106. Defendant Meijer retaliated against Plaintiff for opposing harassment and discriminatory treatment by unfairly changing her work assignments and then constructively discharging her.

107. Defendant Meijer unlawfully retaliated against Plaintiff because of her protected conduct.

108. As a direct and proximate result of Defendant Meijer's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; and loss of professional reputation.

### COUNT VI

### HOSTILE WORK ENVIRONMENT IN VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2701 et seq.

109. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

110. At all relevant times, Defendant Meijer was an employer, and Plaintiff was an employee covered by and within the meaning of the Elliott-Larsen Civil Rights Act, MCL 37.2201.

111. Plaintiff is a member of a protected class as a female.

112. During Plaintiff's employment, Defendant Meijer's employees and Defendant Mathis subjected Plaintiff to severe and pervasive unwelcome sexual conduct and communication that was intended to and did substantially interfere with Plaintiff's employment.

113. This unwelcome conduct created a hostile work environment based on Plaintiff's sex.

114. This conduct was objectively and subjectively such that a reasonable person would find it hostile or abusive.

115. Plaintiff found this conduct both objectively and subjectively offensive.

116. Defendant Meijer had both actual and constructive notice that its employees and Defendant Mathis had created a sexually and/or sex-based hostile and offensive work environment for Plaintiff.

117. Plaintiff opposed and appropriately reported the unwelcome and offensive conduct to Defendant Meijer.

118. Defendant Meijer failed to take effective remedial action to stop the harassment.

119. As a direct and proximate result of Defendant Meijer's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; and loss of professional reputation.

## **RELIEF REQUESTED**

For all of the foregoing reasons, Plaintiff Tonya King demands judgment against Defendants as follows:

a. Declare the practices and actions of Defendants as unlawful employment practices in violation of TITLE VII and Michigan's ELCRA;

b. Award compensatory damages for monetary and non-monetary loss in whatever amount she is found to be entitled;

c. Award exemplary damages in whatever amount she is found to be entitled;

d. Award lost wages and benefits, past and future, and front pay in whatever amount she is found to be entitled;

e. Award liquidated damages;

f. Award punitive damages in whatever amount she is found to be entitled;

g. Award interest, costs, and reasonable attorney fees; and

h. Award whatever other equitable relief this court finds appropriate.

                                                              Respectfully submitted,
                                                              NACHTLAW, P.C.

                                                              */S/* David Nacht
                                                              David A. Nacht (P47034)
                                                              NACHTLAW, P.C.
                                                              Attorney for Plaintiff
                                                              101 N. Main St., Suite 555
                                                              Ann Arbor, Michigan 48104
                                                              (734) 663-7550
Date: November 4, 2020                                 dnacht@nachtlaw.com

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

TONYA KING,

       Plaintiff,                      Case No.:

v.                                                   Hon.

MEIJER, INC. and AUSTIN MATHIS,

       Defendants.

| David A. Nacht (P47034) |
| --- |
| Fabiola A. Galguera (P84212) |
| NACHTLAW, P.C. |
| Attorney for Plaintiff |
| 101 N. Main St., Suite 555 |
| Ann Arbor, Michigan 48104 |
| (734) 663-7550 |
| dnacht@nachtlaw.com |
| fgalguera@nachtlaw.com |

### **DEMAND FOR TRIAL BY JURY**

      Plaintiff, by and through her attorneys, NACHTLAW, P.C., hereby demands a trial by jury as to all those issues so triable as of right.

                                          Respectfully submitted,
                                          NACHTLAW, P.C.

                                          */S/* David Nacht
                                          David A. Nacht (P47034)
                                          NACHTLAW, P.C.
                                          Attorney for Plaintiff
                                          101 N. Main St., Suite 555
                                          Ann Arbor, Michigan 48104
                                          (734) 663-7550
                                          dnacht@nachtlaw.com

Date: November 5, 2020